UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KHOA PHAM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN FAMILY CONNECT PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Defendant. | CASE NO. 2:24-cv-01781-RSL <br><br> ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CONTINUING TRIAL DATE |

This matter comes before the Court on defendant's motion for summary judgment (Dkt. 21) and motion for relief from the remaining case management deadlines (Dkt. 30). Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

**A. Insurance Fair Conduct Act**

Plaintiffs, proceeding *pro se*, set forth their claims in a narrative form, requesting a fair settlement of their insurance claim as promised in the personal property coverage policy issued by defendant American Family Connect Property and Casualty Insurance Company. Dkt. 1-2. To the extent the complaint asserts a claim under Washington's Insurance Fair Conduct Act ("IFCA"), plaintiffs were required to "provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner"

twenty days prior to filing the cause of action. RCW 48.30.015(8(a). Defendant asserts that plaintiffs failed to provide the statutorily required notice, Dkt. 24 at ¶ 19, and plaintiffs have not addressed this argument or produced evidence that written notice was provided. Because "IFCA's pre-suit notice provision is a mandatory condition precedent to an IFCA lawsuit," *MKB Constructors v. Am. Zurich Ins. Co*., 49 F. Supp. 3d 814, 840 (W.D. Wash. 2014) (collecting cases), plaintiffs' IFCA claim is hereby DISMISSED.

### B. Violations of the Washington Insurance Regulations

Plaintiffs also allege that defendant engaged in unfair settlement practices in violation of WAC 284-30-330 and WAC 284-30-360. These insurance regulations contain multiple subparts, each describing different duties or prohibitions imposed on insurers. The only subpart specifically mentioned in opposition to defendant's motion for summary judgment is WAC 284-30-330(8). In their narrative, however, plaintiffs take issue with the responsiveness of defendant's communications, defendant's failure to pay the replacement cost (or even the original purchase price) of items for which they had original receipts, defendant's across-the-board depreciation of property that holds its value and misstatement of valuation evidence provided, defendant's refusal to consider photographs as part of plaintiffs' proof of loss, and defendant's attempt to settle a $171,390 claim for $29,181.34.[1]

WAC 284-30-330(8) prohibits insurers from "[a]ttempting to settle a claim for less than the amount to which a reasonable person would have believed he or she was entitled

---

[1] To the extent defendant objects to consideration of plaintiffs' narrative because it is not in the form of a declaration, the objection is overruled. "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Rule 56 itself invites the submission of documents, such as discovery responses, that would not be admissible in their current form. Because the substance of plaintiffs' narrative are within their personal knowledge and could be admitted into evidence at trial through their testimony, it may be considered in the context of this motion.

by reference to written or printed advertising material accompany or made part of an application." Plaintiffs have not identified any advertising material that may have given rise to a belief that they were entitled to more than what was specified in the policy.

WAC 284-30-330(2) and (5) and WAC 284-30-360 require insurers to respond to communications and affirm or deny coverage in a timely manner. Plaintiffs notified defendant that they had incurred a theft loss on May 31, 2024. The parties communicated in writing and over the phone fairly regularly between June 14, 2024, and September 18, 2024, the date defendant issued payment on the claim, with the longest time between communication being a little more than a week. Dkt. 24. Based on the undisputed chronology of this case, plaintiffs cannot show a violation of WAC 284-30-330(2) or (5) or WAC 284-30-360.

Plaintiffs' demand for immediate payment of the Replacement Cost Value of the lost items may implicate WAC 284-30-330(1) and/or (6), but the argument reflects a misunderstanding of the policy provisions. Unless and until plaintiffs replace a stolen item, defendant is obligated to pay only its Actual Cash Value, which is the cost of the same item in a used condition or, if a used item is not available in the market, the cost of the same item in new condition less a reasonable deduction for wear and tear, deterioration, and obsolescence. Dkt. 24 at 22 and 28.

To the extent plaintiffs are challenging the decision to depreciate collector items that hold or increase value over time and/or defendant's misstatement of the valuation evidence provided by plaintiffs, a jury could find that these acts were unreasonable in the circumstances of this case and in violation of WAC 284-30-330(3), (4), (6), and/or (7).

The evidence in the record regarding defendant refusal to consider the photographic evidence plaintiffs provided in support of their claim may also persuade a jury that defendant acted unreasonably in violation of WAC 284-30-030(1), (3), (4), and/or (7). While the claims adjuster apparently told plaintiffs that photos of the stolen items would

ORDER GRANTING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND CONTINUING TRIAL
DATE - 3

not be considered as proof of authenticity and/or ownership, Dkt. 24 at 45 and Dkt. 24 at ¶ 9, this pronouncement is not mirrored in or required by the policy itself. The amended instructions for what to do in case of a loss direct insureds to prepare an inventory of the lost property (including a description and the actual cash value), to provide a signed, sworn proof of loss, to "[a]ttach all bills, receipts and related documents that justify the figures in the inventory," and to cooperate with the insurer as it investigates the claim. Dkt. 24 at 17. When communicating with plaintiffs, the claims adjuster requested "original invoices, cancelled checks, bill(s) of sale, credit card receipts, appraisal(s), or any other documents to verify proof of ownership." Dkt. 24 at 42. Plaintiffs provided the sworn statement of loss, attesting that they were not claiming any property that had not been stolen and that they were not attempting to deceive or defraud defendant. They also inventoried the stolen items and signed an authorization for third parties to release purchase and gift information in their possession. Dkt. 1-2 at 11-13 and 42-57. Although they were able to describe the lost items, including their quantity, the original purchase price, and the current cost of items of like kind and quality, they had minimal purchase documentation. They therefore provided photographs of the claimed items, a few of which show an impressive wall display of designer sneakers topped by what appears to be Transformer action figures and many of which feature plaintiffs' daughters displaying handbags in one of their bedrooms. Dkt. 12.

      Because most of the items claimed were expensive designer products (handbags, shoes, perfume, electronics, *etc*.) for which plaintiffs lacked documentation, defendant referred the claim for an internal fraud investigation. The investigator reviewed the list of stolen items with plaintiffs, questioning them about particular receipts and purchases. Plaintiffs stated that they had been collecting luxury items (particularly handbags and shoes) for a long time, but had or could get receipts only for those items purchased locally. Dkt. 24 at 70-71. Other items, such as beauty products, electronic devices, and perfumes,

were purchased for family members in Vietnam, who they planned to visit during the summer of 2024. Dkt. 24 at 71. Overall, the investigator was able to confirm many of the purchases for which documentation was provided, but found that two iPhones included in the original inventory list had never been picked up from the store and that plaintiffs had claimed the total paid for three Michael Kors items, despite only claiming that one of the items (a handbag) had been stolen. According to the claims file, plaintiffs removed the iPhones from the claim inventory before defendant raised the issue with them. Dkt. 24 at 83. With regards to the Michael Kors receipt, there is no indication that defendant followed up with the insureds after it confirmed the purchases with the vendor. In the course of this litigation, plaintiffs provided an item-by-item inventory linking the description of the item with the photographs and purchase information they had. Dkt. 20.

During the investigation and at their depositions, plaintiffs explained that some of the items they had collected were gifts and that others were purchased through Facebook Marketplace, at conventions, and on Craigslist, venues that utilized cash payments. Dkt. 22 at 7; Dkt. 24 at 71 and 81. When defense counsel suggested that the pictures of the wall of designer sneakers could have been taken at one of these conventions, Dkt. 12 at 2-3, Mr. Pham disputed that assertion, claiming the collection belonged to him and had been built up over a long period of time. Dkt. 22 at 7-8. There is no indication that defendant took any steps to confirm or rebut the assertion that the photographs were taken at plaintiffs' home. Ultimately, defendant partially denied plaintiffs' claim "due to lack of supporting documentation." Dkt. 24 at 99. *See also* Dkt. 24 at 88. The denial excluded coverage for any items for which a receipt had not been provided, even if plaintiffs submitted photographs of the items in their house or in their possession. Thus, defendant denied certain claims because it refused to consider the photographs plaintiffs submitted.

Whether a blanket exclusion of photographic evidence in these circumstances, without any investigation regarding whether the photographs were authentic and without

ORDER GRANTING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND CONTINUING TRIAL
DATE - 5

any finding of fraud, was reasonable is for the jury to decide. Similarly, whether defendant reasonably altered the dollar values on certain receipts and whether it reasonably depreciated the value of the collector's items is an issue of fact that precludes summary judgment.

### C. Consumer Protection Act

The last question for the Court on this motion for summary judgment is whether plaintiffs can obtain relief for unfair methods of competition or unfair/deceptive acts or practices that violate WAC 284-30-330. "The Consumer Protection Act (CPA), ch. 1986 RCW, prohibits unfair and deceptive trade practices and can be enforced by private citizens." *Peoples v. United Servs. Auto. Assoc.*, 194 Wn.2d 771, 774 (2019). Acts that violate Washington insurance regulations affect the public interest, are *per se* unfair or deceptive acts for purposes of the CPA, and are subject to that statute's enforcement provisions. *Ngethpharat v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-00454-MJP, 2025 WL 2161754, at * 7 (W.D. Wash. July 29, 2025); *Peoples*, 194 Wn.2d at 778. The Court has already determined that the *pro se* plaintiffs adequately alleged facts that could support a CPA claim and, as discussed above, there is evidence in the record from which a jury could find that defendant acted unreasonably and in violation of WAC 284-30-330. There is also ample evidence in the record to support a finding that the coverage denial deprived plaintiffs of reimbursement arguably due and owing under their insurance policy, causing them injury.[2]

### D. Motion for Relief from Remaining Case Management Deadlines

Defendant's request to vacate all remaining case management deadlines was ripe for consideration as of January 5, 2026, and is unopposed. The Court finds that a 60-day continuance of the trial date will allow the parties to evaluate the above determinations,

---

[2] Plaintiffs have not pursued a common law bad faith or breach of contract claim in this case.

ORDER GRANTING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND CONTINUING TRIAL
DATE - 6

determine whether additional settlement discussions might be fruitful, and proceed to trial in an orderly fashion.

For all of the foregoing reasons, defendant's motion for summary judgment (Dkt. 21) is GRANTED as to plaintiffs' IFCA claim but denied as to the CPA claim premised on violations of WAC 284-30-330. Defendant's unopposed motion to continue the remaining case management deadlines (Dkt. 30) is GRANTED. A new case management order with a trial date of April 6, 2026, will be issued. If the parties believe that settlement is a possibility and would like the assistance of a court neutral in the process, they should contact Teri Roberts, the Judicial Assistant, at Teri_Roberts@wawd.uscourts.gov on or before January 29, 2026.

DATED this 12th day of January, 2026.

*(signature)*
Robert S. Lasnik
United States District Judge